**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER CRANDALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-CV-1109 RLW |
| | ) |
| UNKNOWN ARMIJO, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented plaintiff Christopher Crandall for leave to commence this civil action without prepayment of the required filing fee. [ECF No. 2]. Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court finds that plaintiff's complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a *certified* prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a *certified* copy of his account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff, an inmate at Eastern Reception, Diagnostic and Correctional Center (ERDCC), filed the instant action on the Court's Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff names three individuals as defendants in this action: Unknown Armijo (Correctional Officer); Unknown Hurst (Correctional Officer); and Stacey Jones (Case Manager). Plaintiff sues the defendants in their individual and official capacities.

Plaintiff alleges that in the evening of November 26, 2021, he was being disciplined because of his "own actions" for "taking [his] cell offline." (ECF No. 1 at 5.) Plaintiff states that between 8:00 p.m. and 8:30 p.m. he was taken to a security bench at D Wing 112 and placed there under restraints. (Id.) At around midnight, plaintiff asked Correctional Officer Hurst, who was "doing a walk around," for a restroom break. (Id.) Hurst told plaintiff that when he was taken to a new cell, that was his chance to go to the restroom. (Id.) Plaintiff told defendant Hurst he had not yet been taken to a new cell. Defendant Hurst responded "that it sounded like [plaintiff's] problem." (Id.) At an unspecified time thereafter, plaintiff urinated on himself. (Id.) Plaintiff

3

specifically alleges he sat in urine for "over four hours" while sitting on the security bench at D Wing 112. (Id. at 6.)

Although plaintiff does not indicate the exact time that defendant Hurst returned, he alleges that "CO Hurst and another officer" came back to take him to another cell in C Wing 216. (Id. at 5.) On the way to the cell plaintiff said he had urinated on himself and needed a shower and was "told … no." (Id.) Plaintiff does not allege facts sufficient to indicate what happened when he got to the new cell. In the body of his complaint, plaintiff states that he was "denied at the cell." (Id.) The Informal Resolution Request ("IRR") response attached to plaintiff's complaint states that plaintiff "refused the cell [he was] offered." [1] (ECF No. 1-2 at 2.) In his IRR, plaintiff states that he was "refused at the cell." (ECF No. 1-2 at 1.) Plaintiff alleges he was then taken back to the same security bench to wait once again. (ECF No. 1 at 5.)

Plaintiff asserts that between 4:00 a.m. and 5:00 a.m., Correctional Officers Armijo and Hurst took him from the bench to D Wing 209 and he was "accepted into the cell." (Id.) As stated above, plaintiff indicates the total time he was seated in his own urine was approximately four hours. Plaintiff again asked for a shower, but he was told no by Correctional Officer Armijo, that he would have to wait for the next shower day, two days later. (Id.) Plaintiff states that he took a "bird bath" by making do in his cell through using the sink. (Id. at 6.)

Plaintiff states he was placed with an incompatible higher-level offender in cell D 209, but he does not allege that there were any issues in the new cell, where he remained for three days until he was placed in a different cell.  (Id. at 6, ECF No. 1-2 at 1.)

---

[1]Pursuant to Federal Rule of Civil Procedure 10(c), "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  The IRR is not signed by a Correctional Officer at the Missouri Department of Corrections,.

4

Finally, plaintiff alleges that his Case Manager, Stacey Jones, does not pick up the IRRs at ERDCC per the ERDCC policy. He alleges that per policy, defendant Jones is supposed to pick up the IRRs by doing rounds for the IRRs twice per week. Plaintiff complains that sometimes IRRs are lost or not promptly filed due to Jones's failure to pick them up in a timely manner. As a result, inmates must start the process over again.

Plaintiff seeks monetary damages in this action.

## Discussion

Having thoroughly reviewed and liberally construed plaintiff's complaint, the Court concludes it is subject to dismissal.

A. **Official Capacity Claims**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, the defendants are alleged to be employees of the Missouri Department of Corrections, which is a department of the State of Missouri. As such, plaintiff's official capacity claims against the defendants are actually claims against the State of Missouri itself. Those claims

fail because the State of Missouri is not a "person" for purposes of 42 U.S.C. § 1983, and because plaintiff's claims are barred by the Eleventh Amendment. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

### i.     State of Missouri is Not a 42 U.S.C. § 1983 Person

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983").

Here, plaintiff has sued employees of the Missouri Department of Corrections for money damages. Those claims are treated as claims against the defendants' employer, which is the State of Missouri. As set forth above, a state is not a § 1983 "person" for purposes of such a claim. Because the State of Missouri is not a person, plaintiff is missing an essential element under § 1983. Therefore, these claims must be dismissed.

### ii.     Sovereign Immunity

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh

6

Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived her immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable, because the Supreme Court has determined that § 1983 does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable, because the State of Missouri has not waived its sovereign immunity in this type of case. *See* Mo. Rev. Stat*.* 537.600 (explaining that sovereign immunity is in effect and providing exceptions).

7

Here, plaintiff has sued employees of the State of Missouri in their official capacities. Such claims are treated as being made against the State of Missouri, itself. As noted above, however, the Eleventh Amendment bars suit against a state and no exceptions to sovereign immunity are present in this case. Further, while a state official may be sued in an official capacity for prospective injunctive relief, the Eleventh Amendment bars suit against a state official for monetary damages. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (explaining that the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages, but that a state official may be sued in an official capacity for prospective injunctive relief); and *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment"). In this case, plaintiff is suing for money damages only, so sovereign immunity applies to plaintiff's official capacity claims. Therefore, plaintiff's official capacity claims against the defendants must be dismissed.

B. **Individual Capacity Claims**

    i. **Defendants Armijo and Hurst**

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To establish a conditions of confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

8

(internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). With respect to the "civilized measure of life's necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 832). Therefore, not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment under the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). To establish a constitutional violation for conditions of confinement, a plaintiff must show conditions posed a substantial risk of serious harm and the defendant knew of but disregarded that risk. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012). The length of time a prisoner is subjected to harsh conditions is a critical factor in the analysis. *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996).

Plaintiff's allegations that he was forced to urinate on himself because he was not allowed a restroom break, was made to sit in his own urine for approximately four hours, and was denied a shower for some period of time thereafter do not state a claim of constitutional dimensions. These conditions, though unpleasant, occurred for a limited period of time and do not rise to the level of an objectively, sufficiently serious deprivation. Further, as to the denial of plaintiff's request for a shower, he alleges he had the alternative of using the sink in his new cell to clean himself. *See, e.g., Lamb v. Howe,* No. 15–5526, 2017 WL 318790, at *5 (6th Cir. Jan. 23, 2017) (explaining that "[c]onditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount," and holding that a prisoner's alleged four-hour period of exposure to human waste did not state a constitutional violation); *Key v. McKinney*, 176 F.3d 1083, 1085–86 (8th Cir. 1999) (prisoner restrained in handcuffs and shackles for twenty-four hours, making it more difficult for prisoner to relieve

9

himself and allegedly causing him to urinate on himself, failed to establish a constitutional violation); *Cunningham v. Eyman,* 17 F. App'x 449, 454 (7th Cir. 2001) (inmate failed to establish an Eighth Amendment claim where he alleged he urinated and defecated on himself due to officers' refusal to remove his restraints so he could use the toilet, even though the inmate was forced to remain in his soiled clothing for four to five hours; this was not a "sufficiently serious deprivation"); *LaPine v. Savoie*, No. 16-1893, 2017 WL 6764085, at *5 (6th Cir. Aug. 11, 2017) (inmate failed to state constitutional claim in alleging he was forced to urinate on himself and sit in soiled clothes for three hours because he was denied access to a restroom); *Dominguez-Mendez v. McCoy,* No. 5:10–347–KKC, 2011 WL 1430325, at *2 (E.D. Ky. Apr. 13, 2011) (finding on initial review that inmate's allegation he was not allowed to use restroom and was forced to defecate in his pants failed to state a constitutional claim); *Kanvick v. Nevada*, No. 3:08-CV-00397, 2010 WL 2162324, at *5–6 (D. Nev. Apr.27, 2010) ("a temporary deprivation of access to toilets [lasting up to two hours], in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation"); *Owens v. Padilla*, No. C 06–4778, 2008 WL 3916068, at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim); *Trevino v. Jones*, No. 06-CV-0257, 2007 WL 710213, at *8 (N.D. Okla. Mar. 6, 2007) (use of restrooms only twice during eight-hour period does not constitute cruel and unusual punishment).

Plaintiff's allegations are distinguishable from cases in which courts found that questions of fact existed as to whether an Eighth Amendment violation had occurred. In these cases, the prisoner was subjected to longer periods of deprivation and more severe hardships. *See, e.g., Williams v. Benjamin*, 77 F.3d 756, 764 (4th Cir. 1996) (fact question existed as to whether Eighth Amendment violated where prisoner was placed in four-point restraints for eight hours, officers

10

refused to permit him to wash his eyes, face and body to remove mace he had been sprayed with, and refused to allow him to use a toilet); *Young v. Quinlan*, 960 F.2d 351, 363-64 (3rd Cir. 1992) (summary judgment for defendants was improper where HIV-positive inmate was kept in "dry" cell for four days, was allowed to leave cell to urinate or defecate only once; was not allowed drinking water, to wash his hands before eating, or to shower, and was not given toilet paper despite his diarrhea).

To the extent plaintiff attempts to assert a claim against Defendants Armjio and Hurst based on the humiliation and mental anguish he alleges he suffered from urinating on himself, those assertions are inadequate to state a constitutional claim. *See* 42 U.S.C. § 1997e(e) (no action under § 1983 "for mental and emotional injury suffered while in custody without a prior showing of physical injury.") The same is true for any verbal harassment he may have received from the defendants because of the conditions. *Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983").

      **ii.    Defendant Jones**

Plaintiff's allegations against defendant Jones fail to state a claim upon which relief may be granted with respect to his assertions that she fails to follow the grievance policy at ERDCC. To state a cognizable claim under § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996). There is no federal constitutional right to a grievance procedure, and neither a state law nor a state policy creates one. *See Poe v. Corizon Health*, 2019 WL 186660, at

*4 (E.D. Mo. Jan. 14, 2019). As a result, if a state entity such the Missouri Department of Corrections elects to provide a grievance mechanism, violations of that grievance mechanism's procedures will not give rise to a § 1983 claim. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (the grievance procedure is a procedural right only and confers no substantive right on an inmate); *Ingrassia v. Schafer*, 2012 WL 761143, at *7 (E.D. Mo. Mar. 8, 2012) (ruling against a [detainee] on an administrative complaint does not cause or contribute to the violation) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted)); *see also Reynolds v. Lombardi*, 2013 WL 6134018, at *2 (E.D. Mo. Nov. 21, 2013) (claim that officials failed to respond to letters is legally frivolous).

To the extent plaintiff alleges that defendant Jones violated Missouri Department of Corrections' policies or state regulations by failing to pick up grievances on time or not responding to his grievances in a timely manner, such a claim also fails because there is no federally protected interest in having state officers follow state law or prison officials follow prison regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability); *Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993) (allegation of state law violation, statutory or decisional, does not, in itself, state a claim under federal Constitution or § 1983).

For all of the reasons discussed above, this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 2] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this Order would not be taken in good faith.

A separate Order of Dismissal will accompany this Memorandum and Order.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 25th day of October, 2022.